FOSTER MORSS, APPELLANT, *v.* ROMAN H. GLEASON, IMPLEADED WITH BURTON G. MORSS AND LUMAN REED, RESPONDENT.

*Partnership — Retiring partner — surety to one assuming firm obligations of — when his liability as surety extinguished — Affirmative of the issue.*

When one partner transfers his interest in the firm to a third person, who assumes all the obligations of the retiring partner, and a note of the original firm, given prior to such transfer, is assigned to the person entering into the firm and by him transferred after maturity to an outside party, *held,* that such note could not be enforced by the latter against the partner who had retired from the firm, as he was, as between himself and the new firm, a mere surety for its payment, and, on its transfer to one of the partners of the new firm, such liability on his part was extinguished.

When the making, delivery and transfer of a note sued upon is admitted, but the indebtedness is denied, and the answer further alleges that the plaintiff is not the real party in interest, the affirmative of the issue is with the defendant.

APPEAL from a judgment dismissing plaintiff's complaint, entered upon the report of a referee. The referee found that on the 2d day of January, 1865, the defendants Burton G. Morss, Luman Reed and Roman H. Gleason, were engaged in business at Gilboa, in the county of Schoharie, in this State, as co-partners under the firm name of Morss, Reed & Co.

On the 2d day of January, 1865, the said defendants, by their said firm name, made the note on which this action was brought, of which note the following is a copy :

" $9,814.17.

" For value received, we promise to pay the executors and executrix of Colba Reed, deceased, or bearer, nine thousand eight hundred fourteen dollars and seventeen cents with interest.

" Gilboa, January 2d, 1865.

" MORSS, REED & CO."

On the said note were the following indorsements :

" Received the interest on the within for one year."

" Received the interest on the within for one year, Jan. 2d, 1867."

" Received the interest on the within for one year, Jan. 2d, 1868."

" Received the interest on the within for one year, March 25th, 1869."

The said note was given for money borrowed by the said firm of the executors and executrix of the estate of Colba Reed, deceased.

That the said defendants continued in business together as aforesaid, under the said firm name of Morss, Reed & Co., until the 25th day of October, 1867, when the defendant, Roman H. Gleason, with the assent of the other members of the said firm, sold to one John A. G. Barker his interest in the personal property of the said firm, and in the real estate owned by the members of the said firm, and used in their said business, (the interest of the said defendant Gleason, in said partnership, and in the said real estate, being the one-fourth thereof.) The deed conveying his interest with real estate to said John A. G. Barker, was executed and delivered November 1st, 1867.

That upon the said sale, and the execution of the aforesaid deed, the said defendant, Roman H. Gleason, withdrew from the said firm, and the said Barker took his place as a member of said firm, and the business was thereafter continued at Gilboa aforesaid, in the same firm name of Morss, Reed & Co., the said firm thereafter being composed of the defendants, Burton G. Morss, Luman Reed, and the said John A. G. Barker.

That in the sale by the defendant, Roman H. Gleason, to the said John A. G. Barker, the said Barker assumed all liabilities which the said Gleason had, or which might thereafter accrue against him, said Gleason, from being a member of said firm, and he agreed to indemnify the said Gleason against all costs and charges which might be legally brought against him, from being a member of the said firm.

That at the time of the said sale by the defendant, Roman H. Gleason, to the said John A. G. Barker, the wife of the said defendant, Roman H. Gleason, was the owner and holder of the note in suit, given January 2d, 1865, by the then firm of Morss, Reed & Co., to the executors and executrix of the estate of Colba Reed,

deceased; that she became the owner of the said note February 25th, 1865, and she continued the owner and holder thereof until she delivered it to her husband, Roman H. Gleason, August 11, 1869, as hereinafter stated.

That by an agreement made and entered into by the defendants, Burton G. Morss and Roman H. Gleason, the 2d day of March, 1867, Morss agreed to sell to said Gleason, and the said Gleason agreed to purchase of Morss, his interest in certain real estate in the counties of Otsego and Delaware; that in 1869, the defendant Morss agreed with the defendant Gleason that if he would get the said note in suit of his wife, he, Morss, would take the same as payment on the said agreement of March 2, 1867, for the sale and purchase of his interest in the real estate in Otsego and Delaware counties; that the said Roman H. Gleason, on the 11th day of August, 1869, obtained the said note of his wife, and on the same day delivered the same to Burton G. Morss as a payment on the aforesaid agreement of March 2, 1867, and the said note was so received by the said Morss, and the amount then due on the said note for principal and interest was indorsed on said agreement as so much paid thereon by the said Gleason.

That on July 15, 1870, and before the commencement of this action, the defendant, Burton G. Morss, executed an assignment of the said note to the plaintiff in this action, and delivered the said note to him on that day.

As conclusion of law, the referee found the taking and receiving the said note by the defendant, Burton G. Morss, August 11, 1869, from the said defendant, Roman H. Gleason, as a payment made by the said Gleason on the agreement of March 2, 1867, to the amount due on said note for principal and interest, was a payment and satisfaction of the said note by one of the makers thereof, and the said note could not thereafter be reissued or transferred by the said Burton G. Morss, so as to bind the other makers thereof, as a valid existing note against them, on which an action at law could be maintained, as members of said late firm, by the person to whom it was so reissued or transferred.

That the assignment and delivery of said note by the defendant, Burton G. Morss, to the plaintiff, July 15, 1870, gave to the said plaintiff no right of action at law on the said note against the defendant

Roman H. Gleason, and that the said plaintiff could not maintain this action against the said defendant, Roman H. Gleason.

That the said plaintiff was not entitled to recover anything in this action against the defendant, Roman H. Gleason, and that the said defendant, Roman H. Gleason, is entitled to judgment, that the complaint of the plaintiff be dismissed with costs.

*F. J. Fitch* and *Amasa J. Parker*, for the appellant.

*A. M. Osborn*, for the respondent.

BOCKES, J. :

The referee correctly held that the defendant had the affirmative under the pleadings. The answer contained no general denial, nor was there any specific denial of any material allegation of the complaint. The making, delivery and transfer of the note, stood admitted on the pleadings. Those facts being admitted, the denial of indebtedness or liability by the defendant, was but a denial of a conclusion of law, and tendered no issue of fact for trial.[*] True, there was a denial that plaintiff was the real party in interest. This however amounted to nothing, [†] except as it was accompanied with the averment, that the transfer to the plaintiff was fraudulent, and that B. G. Morss, one of the defendants, was the real party for whose benefit, and under whose direction, the action was prosecuted; which was matter of defense to be established by proof. The affirmative of this issue was with the defendant, as was the case with all the issues raised by the answer. The affirmative on the trial was properly given to the defendant.

The question presented on the appeal is on the merits. It is this: Whether the defendant, Roman H. Gleason, remained liable on the note in suit, after its transfer to Burton G. Morss.

The note was made by the firm, and in the firm name of "Morss, Reed & Co., composed of Burton G. Morss, Luman Reed and Roman H. Gleason. While the note was outstanding in the hands of a third party, Gleason went out of the firm, and John A. G. Barker took his place, and assumed his liabilities as a mem-

[*] 8 How., 273; 7 Barb., 482.

[†] 4 How., 202; 7 Barb., 482; 17 id., 530; 37 How., 97.

ber thereof, with the consent of the other parties. The change agreed upon and accepted by all, was the introduction and substitution of Barker as a member of the firm in the place of Gleason, with all the rights and all the liabilities of the latter pertaining to the partnership business and affairs. The other partners, Morss and Reed, accepted Barker in the place of Gleason, and the business was thereafter conducted by Morss, Reed & Barker, the same as it had been previously, and in the same firm name. Under this arrangement and substitution, the note in suit was to be paid by the new firm. Morss and Reed were originally liable on it, and Barker had taken Gleason's place, and assumed his obligation thereon. The new firm were now obligated to pay the note. Gleason's liability to the holder remained the same as before the change in the partnership; but, as between him and the members of the new firm, the latter were primarily liable, and Gleason's obligation was that of surety.[*] He was surety for the payment of the debt, for which the members of the new firm were jointly and individually liable. If compelled to pay the note, or any part of it, he would have a right of action against them, to be reimbursed the amount; the same in all respects as if the note had been made by the new firm as principal debtor, and by himself as surety. It was on this principle that Putnam was allowed to have return of the money paid by him, in the case cited.[†] And it was then said that the liability of the out-going partner, the other associates having accepted of his transferree in his place and stead, was that of surety only; and it was added, "the money he was compelled to pay and did pay while holding that position for his principals, he was clearly entitled to recover from them." Therefore, after the substitution and acceptance by all parties, of Barker as partner in the place of Gleason, the members of the new firm were primarily liable for the debt evidenced by the note in suit, and Gleason's obligation was that of surety for its payment by them. While the parties held this relation to each other, the note became the property of Morss, who, as member of the new firm, was primarily liable for its payment. Now the question arises, could he, holding this position of primary debtor on the note, enforce it against Gleason, who was his surety for its payment?

[*] 32 N. Y., 501.    [†] 32 N. Y., 501; 51 Barb., 215; 54 Barb., 351.

Manifestly he could not. When the note became the property of the principal debtor, the liability of the surety thereon ceased. So it is entirely clear that Burton G. Morss, being principal debtor, could not have maintained an action on the note against the defendant, who, as to him, held the position of surety for its payment merely. Nor did the plaintiff, to whom Morss assumed to transfer the note, hold any better position. The note was dishonored when transferred; hence it was subject to all existing defenses while in the hands of Morss, the former holder.

If the note had been purchased by the new firm with the funds of the firm, or had the firm become the owner through some arrangement with the holder, the liability of the defendant, Gleason, as surety for the payment of the debt, would thereby have been extinguished; for in that case the debt itself would have been satisfied and extinguished. The firm would then have done just what it was bound to do — satisfied its own debt; and the obligation of the surety, to the effect that the firm should satisfy the debt, would have been discharged. Nor could the obligation of the surety be renewed without his express consent, or a new undertaking on his part. The case is the same here, where satisfaction of the debt was made to the creditor by one member of the firm. The debt was his debt. The partners were, one and all, liable for its payment. The obligation of the surety was, that those liable on the note, one or all, should satisfy it. If satisfied by any one primarily bound to pay it, his obligation was discharged. Whatever rights remained to Burton G. Morss, after he became the owner of the note, growing out of the demand, or its purchase or payment, pertained to the parties themselves, to be adjusted on an accounting and settlement of the partnership. Doubtless, one member of a firm may become a creditor of the firm; certainly he may, in a qualified sense. He may be compelled to satisfy partnership debts from his individual funds, and thus may be said to be a creditor of the firm. He may also voluntarily buy in notes, and take assignments of claims against the firm of which he is a member; but he cannot take compulsory proceedings thereon at law against his partners; nor can he, by any transfer of them, confer such right, excepting always commercial paper transferred before maturity to *bona fide* purchasers or transferrees.

It is urged, that if the transfer of a firm note to one of the partners, satisfies and discharges the debt, as a firm debt, then the note in this case became satisfied, and the debt was discharged, on its transfer by Mrs. Gleason to R. H. Gleason ; and the latter, having turned it out to Morss as a valid note, is estopped from asserting the contrary. In the first place, perhaps, it may be answered, that it does not distinctly appear that the note was transferred by Mrs. Gleason to R. H. Gleason. True, he got the note, as the case shows, and delivered it to Morss as a payment on a contract between himself and Morss; but it does not clearly and explicitly appear but that Mrs. Gleason consented to the use of her own note in the way stated, without conferring on Mr. Gleason any title to it whatever. But be this as it may, the defense now interposed does not rest on the assertion that the note was invalid when transferred to Morss. The defense is, that its purchase by Morss operated as payment and satisfaction of it, because it was his own debt, and that the defendant's legal position in regard to it was that of surety merely. The case presents no ground of estoppel, as regards the defense interposed.

After careful consideration of the case, I am of the opinion, that the judgment directed by the referee is right, and should be affirmed.

An extra allowance of $350, for costs, was made in this case in favor of the defendant ; and, from the order giving such additional sum, an appeal has been taken. The case is, as it seems to me, a very proper one for an additional allowance ; nor is the amount given by the order unreasonable. The case may well be considered both difficult and extraordinary, within the provision of the section of the Code, under which allowances are authorized to be made. The order appealed from should be affirmed, with ten dollars costs ; judgment affirmed, with costs ; and the order giving additional costs also affirmed, with ten dollars costs.

Present—MILLER, P. J., BOOKES and BOARDMAN, JJ.

Judgment and orders affirmed, with costs.